IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES BENVENUTO, | ) | Case No. 3:19-CV-2353 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| WARDEN NEIL TURNER, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.     INTRODUCTION

Petitioner, James Benvenuto ("Benvenuto"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Benvenuto is an Ohio inmate currently serving a 34-year term of imprisonment for: (1) 53 fifth-degree felony counts of trafficking in marijuana; (2) one third-degree felony count of trafficking in marijuana; (3) two second-degree felony counts of possession of marijuana; (4) one third-degree felony count of possession of hashish; and (5) one first-degree felony count of engaging in a pattern of corrupt activity. (*Id.*) Mr. Benvenuto, through counsel, asserts four grounds for relief in his petition. (*Id.*)

Respondent, Warden Neil Turner ("Warden"), filed an answer/ return of writ on December 9, 2019. (ECF No 6). Mr. Benvenuto, through counsel, filed a traverse on February 21, 2020. (ECF No. 9.) On February 28, 2020, the Warden filed a reply to the traverse (ECF No. 11), as well as a motion to strike the exhibits attached to the traverse (ECF No. 10). On March 13, 2020, Benvenuto filed an omnibus motion styled as "Petitioner's Response to Respondent's Motion to Strike/Motion to Stay and Hold Proceedings in Abeyance Pending Exhaustion of State Remedies

and Memorandum in Support/Motion for Leave to Expand the Record." (ECF No. 14.)

On September 14, 2020, Magistrate Judge Baughman issued an order granting Mr. Benvenuto's motion to stay and abate proceedings, denying without prejudice Mr. Benvenuto's motion to expand the record, and granting the Warden's motion to strike the exhibits attached to the traverse. (ECF No. 15.) Magistrate Judge Baughman's order further required Mr. Benvenuto to file a notice with the Court by November 16, 2020, advising that he has filed an action in Ohio courts and updating the Court every 90 days as to the status of that state action. (*Id.*) Mr. Benvenuto, through counsel, filed a series of 90-day status reports (*see* ECF Nos. 16-19) and ultimately advised the Court on November 11, 2021, that: (1) on December 9, 2020, Allen County Court of Common Pleas denied Mr. Benvenuto's Petition for Post-Conviction Release; (2) on the Third District Court of Appeals subsequently denied Mr. Benvenuto's appeal; and (3) on October 26, 2021, the Supreme Court of Ohio declined to accept jurisdiction of Mr. Benvenuto's appeal. (ECF No. 20.) Since that time, neither party has filed additional briefing in this case.

This matter was referred to me on September 2, 2022, under Local Rule 72.2 to prepare a report and recommendation on Mr. Benvenuto's petition and other case-dispositive motions. For the foregoing reasons, I recommend that Benvenuto's claims be DISMISSED and/or DENIED. I further recommend that this Court not grant Mr. Benvenuto a certificate of appealability.

## II.     RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Third

District summarized the facts as follows:

{¶ 3} On August 9, 2016, investigators from the West Central Ohio Crime Task Force ("WCOCTF") were conducting surveillance on Vincent McKercher ("McKercher") in Allen County. (05/05/2017 Tr. at 8). McKercher had a history of trafficking in marijuana. (Id. at 9). Investigators followed McKercher (in his vehicle) from a barbershop in Lima, Ohio to a warehouse located at 519 N. Jackson St. in Lima. (*Id.* at 11). Shortly thereafter, investigators observed McKercher's vehicle leaving the warehouse, with a second vehicle leaving the warehouse directly behind it. (*Id.* at 15). The vehicles headed in different directions, so investigators split up in order to follow both vehicles. (*Id.*). Shortly thereafter, and with the assistance from local law enforcement, McKercher's vehicle was stopped for a window tint violation. (Id. at 99). After the stop and subsequent search of McKercher's vehicle, officers located a duffle bag in the trunk that contained marijuana. (*Id.* at 100). During the search of McKercher's vehicle, investigators observed an unknown male in the vicinity watching the traffic stop while talking on his cell phone. (*Id.* at 21–22).

{¶ 4} While McKercher's traffic stop and search was underway, investigators and local law enforcement followed the second vehicle, a Chrysler 200, which left the warehouse behind McKercher's vehicle. (*Id.* at 18–19). Patrolman Amy Glanemann ("Officer Glanemann") of the Lima Police Department stopped the driver of the Chrysler 200 for failing to properly signal the intention to turn 100 feet prior to an intersection. (*Id*. at 66). The Appellant was identified as the driver of the Chrysler 200. (*Id.* at 67).

{¶ 5} While other law enforcement officers were running Appellant's license information through LEADS, Officer Glanemann had her K–9 partner, Diego, conduct a free air sniff of Appellant's vehicle. (*Id.* at 69). Officer Glanemann determined that Diego alerted to the presence of drugs at Appellant's vehicle side door. (*Id*.). As a result of the free air sniff, Appellant was removed from the vehicle. (*Id.*). During the pat-down of Appellant, officers discovered $4,600 in cash and a container containing various pills in his pants pockets. (*Id.* at 70). Officers learned from an on-line application that Appellant's pills were Hydrocodone, a Schedule II narcotic. (*Id.*). The search of Appellant's vehicle also revealed the presence of packaging containing marijuana residue (marijuana "shake") in the passenger compartment. (*Id.* at 71). Investigators also discovered that Appellant's vehicle was a rental vehicle. (*Id*. at 52). Thus, investigators seized the vehicle. (*Id.*).

{¶ 6} After seizing Appellant's vehicle and while law enforcement officers were driving it to the Allen County Sheriff's Department for a more thorough search, Appellant's cell phone, which was left in the vehicle, rang multiple times. (*Id.* at 22). Based on the collective behaviors of McKercher and Appellant, the large quantity of marijuana found in McKercher's vehicle, the suspicious individual in the area watching McKercher's traffic stop, and Appellant's cell phone ringing in the rental vehicle, law enforcement officials decided to obtain a warrant to search the warehouse located at 519 N. Jackson St. for drugs. (*Id.* at 20–21).

{¶ 7} Investigators, with the assistance of local law enforcement, drove to the warehouse to set up a perimeter around it until the warrant was secured. (*Id.* at 21). However, while at the warehouse, law enforcement officials noticed that the warehouse garage door was open and

an unidentified white vehicle was in the warehouse. (*Id.* at 22). Fearing that evidence in the warehouse was at risk of being destroyed or removed, Investigator Trent Kunkleman ("Investigator Kunkleman") of the WCOCTF, knocked on the door of the building attached to the warehouse. (*Id.* at 24). When a woman, later identified as Beth McElfresh ("McElfresh"), answered and opened the door, Investigator Kunkleman noted the smell of raw marijuana emanating from the residence. (*Id.*). Investigator Kunkleman asked McElfresh if the residence was connected to the warehouse and McElfresh indicated that it was. (*Id.*). Thereupon, Investigator Kunkleman, along with other law enforcement officials, entered the residence to conduct a protective sweep of the area to ensure that potential evidence was not destroyed.1 (*Id.* at 25). Officers then conducted a protective sweep of the residence and the warehouse, noting that marijuana was discovered in plain view in the residential portion of the property. (*Id.* at 27). Further, Investigator Kunkleman testified that during the protective sweep of the area, law enforcement did not open any drawers or check any enclosed spaces unless the space was large enough to hide a human being. (*Id.*).

{¶ 8} Once the initial sweep was finalized, law enforcement officers exited the premises and completed the search warrant process for 519 N. Jackson St. (*Id.* at 28). Upon submission of the search warrant, the reviewing judge determined probable cause existed and issued the search warrant. (*Id.* at 29). Investigators then returned to the warehouse with the warrant and searched the premises. (*Id.*). The search resulted in the seizure of a number of drug-related items. (*Id.*). Investigators also discovered a video tape security system that was utilized in the warehouse portion of 519 N. Jackson St. (*Id.* at 29–30). Law enforcement subsequently discovered that the system had recorded their protective sweep of the residence, as well as the numerous (purported) transactions involving the sale of marijuana within the warehouse. (*Id.* at 30).

(ECF No. 6-1, Exhibit 19); *State v. Benvenuto,* 2018 WL 2966853, 2018-Ohio-2242, at ¶¶ 3-8 (3d Dist. June 11, 2018).

## III.     PROCEDURAL HISTORY

### A.     <u>State Court Conviction</u>

On October 14, 2016, Mr. Benvenuto was indicted on the following offenses: (1) 53 fifth-degree felony counts of trafficking in marijuana, in violation of R.C. § 2925.03(A)(1) & R.C. § 2925.03(C)(3)(a); (2) one third-degree felony count of trafficking in marijuana, with a specification for forfeiture of money in a drug case pursuant to R.C. § 2941.1417(A), and a specification for forfeiture of property pursuant to R.C. § 2941.1417(A), in violation of R.C. § 2925.03(A)(1) & R.C. § 2925.03(C)(3)(d); (3) two second-degree felony counts of possession of marijuana, with a specification for forfeiture of money in a drug case pursuant to R.C. § 2941.1417(A), and a

specification for forfeiture of property pursuant to R.C. § 2941.1417(A), in violation of R.C. § 2925.11(A) & R.C. 2925.11(C)(3)(e); (4) one third-degree felony count of possession of hashish with a specification for forfeiture of money in a drug case, pursuant to R.C. § 2941.1417(A), and a specification for forfeiture of property pursuant to R.C. § 2941.1417(A); and (4) one first-degree felony count of engaging in a pattern of corrupt activity ("RICO"), with a specification for forfeiture of money in a drug case, pursuant to R.C. § 2941.1417(A), and a specification for forfeiture of property, pursuant to R.C. § 2941.1417(A), in violation of R.C. § 2923.32(A)(1) & § 2923.32(B)(1). (ECF No. 6-1, Exhibit 1.) Mr. Benvenuto pled not guilty pleas to all charges.

On December 19, 2016, Mr. Benvenuto, through counsel, filed a motion to suppress the seized evidence (ECF No. 6-1, Exhibit 3). The two bases for Mr. Benvenuto's motion to suppress were: (1) the initial stop of Defendant's vehicle was unconstitutional when viewed from the standpoint of an objectively reasonable police officer; and (2) the "protective sweep" exception to the Fourth Amendment warrant requirement is not applicable to the case at bar. (*Id.*) Mr. Benvenuto, through counsel, also filed a supplemental memorandum in support of the motion to suppress, wherein he also asserted that "absent the unconstitutional stop of Defendant's vehicle and/or the unconstitutional entry and search of Defendant's home, the State lacked sufficient probable cause for the resulting warrant." (ECF No. 6-1, Exhibit 4.) The State did not file a written response. On May 5, 2017, the trial court conducted a hearing on Appellant's motion to suppress. (ECF No. 6-2, Tr. Vol. 1.) Three witnesses testified for the State including, in relevant part, Lima Police Officer Dustin Brotherwood. (*Id.*)

In a written ruling, the trial court determined that the motion to suppress lacked merit and denied it. (ECF No. 6-1, Exhibit 5.) First, the trial court determined, based on the totality of the circumstances, that the traffic stop of Mr. Benvenuto for failing to signal his turn within the required distance was reasonable for Fourth Amendment purposes because the officer articulated specific

facts – violation of a Lima City ordinance – that "would warrant a person of reasonable caution to believe that the driver has committed, or is committing a crime, including a minor traffic violation." (*Id*.,PageID # 116.)

Second, the trial court identified the "following objective facts that were known to the Investigators when they decided to make the warrantless entry into 519 Jackson":

> McKercher was already under investigation for illegal drug activity; McKercher's Honda went into the warehouse at 519 Jackson and left shortly thereafter, followed by an unknown Chrysler; the Chrysler was learned to be a rental, and drug dealers are known to use rental cars; a large amount of packaged marijuana was located in McKercher's car after it left the warehouse; while McKeercher's car was being searched a pedestrian, who investigators said like a look-out was talking on the phone; defendant's rented Chrysler was observed being driven in a manner that appeared to be trying to elude officers; after defendant was stopped, he had drugs on his person and there were drug residue, in a bag similar to the heat-sealed located in McKercher's trunk; defendant's phone was ringing; there was a car in the warehouse seen by Investigator Sunderland; Officers could smell raw marijuana in the dwelling when the front door was opened; the passenger in McKercher's car had a large sum of money on him; and defendant had a large sum of money on him.

(*Id.* at PageID # 120.)  The trial court further found that "all of this happened in minutes," and "based on the facts, investigators could have reasonably concluded that there were drug in the warehouse and were acting properly when they decided to set up a perimeter around the warehouse and try to get a warrant."  (*Id.*)  Thus, the trial court concluded that the officers had an objectively reasonable basis for concluding that the loss or destruction of evidence in the warehouse was imminent."  (*Id.*)

Finally, the trial court recognized that "[i]n determining the sufficiency of probable cause from an affidavit submitted to support a search warrant, the issuing judge must look to the totality of the circumstances set forth in the affidavit submitted and determine whether probable cause exists that contraband or evidence of a crime would be found in a particular place."  (*Id.,* PageID# 21.) The trial court then held, based on the totality of the circumstances and applying due deference to the magistrate judge's determination, that the magistrate judge had a substantial basis for concluding that probable cause supported the existence of the warrant.  (*Id.*) The trial court further stated that

6

"Defendant has not presented this Court with any reason to substitute its judgment for that of the judge who issued the search warrant." (*Id.*)

On July 6, 2017, Mr. Benvenuto entered into and signed a negotiated plea of no contest to all charges and specifications and was found guilty of all counts contained in the indictment. (Exhibit 7.)  The trial court engaged in an extensive colloquy with Mr. Benvenuto, accepted his no contest pleas, and found him guilty of all the charges. (ECF No. 6-2, Vol. 2; ECF No. 6-1, Exhibit 8).

On August 21, 2017, the trial court held a sentencing hearing. (ECF No. 6-2, Vol. 3). During the sentencing hearing, both the State and Mr. Benvenuto's counsel advised the trial court that merger was not an issue as to sentencing. (*Id.* at PageID # 683). Thereafter, the trial court sentenced Mr. Benvenuto to 12 months in prison on each of the 53 fifth-degree felony trafficking in marijuana convictions, and ordered him to serve the fifth-degree felony sentences as follows:

- Counts 1–5: Concurrently;
- Counts 6-10: Concurrent to each other, consecutive to other sentences;
- Counts 11-15: Concurrent to each other, consecutive to other sentences;
- Counts 16-20: Concurrent to each other, consecutive to other sentences;
- Counts 21-25: Concurrent to each other, consecutive to other sentences;
- Counts 26-30: Concurrent to each other, consecutive to other sentences;
- Counts 31-35: Concurrent to each other, consecutive to other sentences;
- Counts 36-40: Concurrent to each other, consecutive to other sentences;
- Counts 41-45: Concurrent to each other, consecutive to other sentences;
- Counts 46-50: Concurrent to each other, consecutive to other sentences; and
- Counts 51-53: Concurrent to each other, consecutive to other sentences.

(ECF No. 6-1, Exhibit 9.)

The trial court also sentenced Mr. Benvenuto to:

- Count 54: 36 consecutive months in prison for the third-degree felony for trafficking in marijuana conviction;
- Counts 55-56: 36 consecutive months in prison for the possession of marijuana conviction;
- Counts 57: 36 consecutive months in prison for the possession for hashish conviction; and
- Count 58: 11 consecutive years in prison for the Engaging in a Pattern of Corrupt Activity conviction.

(ECF No. 6-1, Exhibit 9.)  This resulted in an aggregate 34-year term of imprisonment.

Regarding the specifications for forfeiture of money in a drug case and forfeiture of property set forth in Counts 54, 55, 56, 57, and 58, the trial court ordered in a *nunc pro tunc* amendment to the judgment entry that Mr. Benvenuto must forfeit $68,467.00 in U.S. currency, along with his interest in the real property located at 519 N. Jackson St. in Lima, Ohio.

### D.    Direct Appeal

On September 12, 2017, through his trial counsel, Mr. Benvenuto timely filed an appeal notice in the Third District Court of Appeals (*id.,* Exhibit 11), as well as a motion in the trial court to appoint new appellate counsel (*id.,* Exhibit 12).  The trial court appointed Mr. Benvenuto new counsel for his direct  appeal (*id.,* Exhibit 13).  Mr. Benvenuto's new appellate counsel – the same counsel that represents him in the instant case - filed  another notice of appeal (*id.,* Exhibit 14) and a notice of substitution of counsel (*id.,* Exhibit 15) in the state appellate court.

Mr. Benventuo raised the following five claims on direct appeal:

1.  The trial court erred in overruling defendant's motion to suppress evidence seized in violation of the defendant's constitutional rights when the evidence demonstrated that officers went inside a constitutionally protected abode without obtaining a warrant, which was per se unreasonable and was not permitted under any legally recognized exception.

2.  The trial court erred in overruling defendant's motion to suppress evidence seized in violation of the defendant's constitutional rights when the evidence demonstrated the warrant was defective.

3.  Benvenuto's RICO conviction was not supported by sufficient evidence in the record where the state represented that the predicate offenses stemmed from the same date, time, and location constituting a "single event" and not a "pattern of corrupt activity."

4.  The State erred when it created two separate marijuana possession charges out of the simultaneous possession of the same drug found on the same date, time, and location instead of aggregating the amounts into a single offense. The trial court consequently erred when it failed to merge the two charges as well as trafficking charge into a single offense and entered a consecutive prison sentence on the charges.

5.  The trial court erred by sentencing Benvenuto to a 34-year prison sentence stemming

from marijuana charges contrary to the sentencing statutes and in violation of the Eighth
Amendment prohibition against cruel and unusual punishment.

(*Id.,* Exhibit 16, PageID# 165-66).

The State filed an opposition brief on February 28, 2018 (*id.,* Exhibit 17), and Mr. Benvenuto,

through counsel, filed a reply brief on March 19, 2018 (*id.,* Exhibit 18).  On June 11, 2018, the Third

District Court of Appeals issued an opinion affirming the judgment of the trial court. (*Id.,* Exhibit

19).

### E.    Ohio Supreme Court

On July 26, 2018, through his appellate counsel, Mr. Benvenuto, timely filed an appeal

notice in the Ohio Supreme Court (*id.,* Exhibit 20), and raised the following five propositions of law

in his jurisdictional memorandum:

1. The State should not be permitted to pursue separate drug possession charges and seek
   multiple sentences for the simultaneous possession of the same controlled substance
   under R.C. 2925.11 found at one location on the same date and time. A trial court
   should merge separate drug possession charges arising out of the simultaneous
   possession of the same controlled substance under R.C. 2925.11 found at one location
   on the same date and time as well as other allied drug offenses of similar import.

2. The State cannot justify a warrantless entry into a home where there is no objective
   reasonable basis in the record for concluding that the loss or destruction of evidence
   was imminent. Even if the officers' initial entry into a home was justified, once the
   inquiry into the exigent circumstances is settled officers cannot continue to search a
   home without obtaining a warrant.

3. Benvenuto' s constitutional rights were violated where a subsequent warrant contained
   illegally obtained information and failed to establish probable cause because there was
   no nexus between the place to be searched and the evidence to be sought.

4. Benvenuto's RICO conviction was not supported by sufficient evidence where the State
   represented the predicate acts for the RICO all stemmed from the same date, time and
   location thereby negating a "pattern of corrupt activity".

5. The court erred by upholding what amounts to a life sentence, 34 years in prison, for
   non-violent marijuana charges in violation of the Eight Amendment prohibition against
   cruel and unusual punishment and contrary to the sentencing statutes.

(*Id.,* Exhibit 21.)

The State did not file a written response.  On October 10, 2018, under Case No. 2018-1056, the Ohio Supreme Court declined to accept jurisdiction of Mr. Benvenuto's appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *State v. Benvenuto*, 153 Ohio St.3d 1496, 2018-Ohio-4092, 08 N.E.3d 1105. (ECF No. 6-1, Exhibit 22.)

### E.    Federal Habeas Action

Mr. Benvenuto, through his state appellate counsel, filed his 28 U.S.C. § 2254 habeas petition on October 9, 2019. (Doc. 1 PageID #15.) Mr. Benvenuto's habeas petition raises the following four grounds for relief:

> **GROUND ONE**: Petitioner's convictions and separate sentences for drug possession charges, i.e., edible and leaf marijuana, as well as drug trafficking, for the simultaneous possession of essentially the same controlled substance under RC 2925.11, i.e., marijuana, from one location, on the same date and time, violates the Double Jeopardy Clause of the Fifth Amendment and Equal Protection Clause of the Fourteenth Amendment.

> <u>Supporting facts</u>: Petitioner was charged, convicted, and sentenced separately with possession of edible marijuana, Count 55, and possession of leaf marijuana, Count 56, both felonies of the third degree, for marijuana found at the same time in the same warehouse, specifically 519 N. Jackson on August 9, 2016.  The trial court did not merge the counts and imposed 3 year maximum consecutive sentences on Petitioner.  Petitioner was also charged, convicted, and sentenced for trafficking leaf marijuana, Count 54, also a felony of the third degree, for marijuana found inside a vehicle that had just come from the leaf marijuana from inside the warehouse on the same day.  The trial court did not merge that count and also imposed 3 year maximum consecutive sentences to Count 55 and 56.

> **GROUND TWO**: Petitioner's conviction of engaging in a pattern of corrupt activity is not supported by sufficient evidence to satisfy the Due Process Clause of the Fourteenth Amendment.

> <u>Supporting Facts</u>: Based upon the State's representations, the trial court determined the predicate offenses that established the "pattern of corrupt activity" for the charge of engaging in a pattern of corrupt activity were Counts 54 through 57 in the indictment, all felonies of the third degree. All of those predicate offenses stemmed from the discovery of drugs on the same day from the same location and therefore could not establish a pattern of corrupt activity.

> **GROUND THREE**: Imposition of the enhanced 34-year prison sentence on Petitioner for marijuana charges after exercising his rights violates the Eighth Amendment and Due Process Clause of the Fourteenth Amendment.

**Supporting Facts**: Petitioner was offered a 10-year plea deal set to expire prior to any testimony being presented at a hearing on his motion to suppress, which he rejected. Following the court's denial of his motion to suppress, he was then offered a 17-year plea deal if he pled guilty and forfeited his right to appeal, which he rejected. Instead, Petitioner forfeited his right to a jury trial and entered a no contest plea to all the count in the indictment to preserve his right to appeal the decision on the motion to suppress. The trial court then imposed a 34-year prison sentence, which was tantamount toa life sentence for Petitioner who was 53 years old at the time. Petitioner's two co- defendants received a 5-year prison sentence and a 3-year sentence respectively.

**GROUND FOUR**: The State failed to provide Petitioner an opportunity for a full and fair litigation of his Fourth Amendment rights.

**Supporting Facts**: Petitioner sought suppression of evidence seized on August 9, 2016 from his home. Officers entered Petitioner's home without a warrant and without consent, conducting not one but two warrantless searches. The State attempted to justify the entries based upon exigent circumstances. However, there was no evidence that the occupants of Petitioner's home were aware of police presence, aware that anyone had been arrested, and no evidence whatsoever that anyone inside the home was making furtive movements or any suspicious sounds consistent with concealing or destroying drugs. The court of appeals adopted the trial court's findings based upon the officer's belief drugs were going to be destroyed contrary to this Court's case law precedent. The court of appeals also failed to cite any case law in support of exigent circumstances in this case. Furthermore, the State withheld exculpatory evidence pertaining to the lead officer's misconduct in falsifying a search warrant affidavit in another case. The misconduct occurred prior to Petitioner's case, but was not provided to Petitioner prior to a hearing on the motion to suppress. The officer testified at the suppression hearing and was relied upon by the court in making its factual findings on the motion to suppress.

(ECF No. 1 PageID #17-18).

The Warden filed an answer/return of writ on December 9, 2019.  (ECF No. 6.)

Mr. Benvenuto, through counsel, filed a traverse on February 21, 2020, reiterating the arguments previously set forth in his petition with respects to Grounds One, Two, and Three.  (ECF No. 9.) But with respect to Ground Four, Mr. Benvenuto argued for the first time in his traverse that he did not have a full and fair opportunity to litigate his Fourth Amendment claim in state court because, he alleged, the prosecutor withheld *Brady v. Maryland,* 373 U.S. 83 (1963), material prior to the trial court suppression hearing, no contest pleas, and direct appeal.  (*Id.,* PageID # 725-32.) Specifically, Mr. Benvenuto maintains that the prosecutor never provided him or his counsel with

11

any information that Lima Police Officer Brotherwood had been reprimanded for falsifying information in a search warrant in another case on April 1, 2016. (*Id.,* PageID # 729-30.)  Mr. Benvenuto attached four affidavits in support of his motion.  (*Id.,* Ex. A-D.)

On February 28, 2020, the Warden filed a reply to the traverse (ECF No. 11), as well as a motion to strike the exhibits attached to Mr. Benvenuto's traverse, including: (1) the affidavit of Martin Yant; (2) the purported copy of Officer Brotherwood's employee personnel file with the Lima Police Department; (3) the affidavit of Mr. Benvenuto; and (4) the affidavit of Mr. Benvenuto's counsel, Dustin Blake. (ECF No. 10.) The rationale for the Warden's motion to strike these exhibits was that Mr. Benvenuto had not previously presented the document to the state courts, the documents do not appear in the state court record, and the Court is thus precluded from considering these documents when adjudicating Mr. Benvenuto's habeas petition.  (*Id.*)

On March 13, 2020, Mr. Benvenuto filed an omnibus motion styled as "Petitioner's Response to Respondent's Motion to Strike/Motion to Stay and Hold Proceedings in Abeyance Pending Exhaustion of State Remedies and Memorandum in Support/Motion for Leave to Expand the Record." (ECF No. 14.)  In that omnibus motion, Mr. Benvenuto – through counsel – conceded that he had not presented the four exhibits attached to the traverse to the Ohio courts, and he requested that the Court stay Mr. Benvenuto's habeas petition and hold it in abeyance "until the Ohio state courts issue all requisite rulings to exhaust the claims contained in his federal habeas petition …" (*Id.*)

On September 14, 2020, Magistrate Judge Baughman issued an order granting Mr. Benvenuto's motion to stay and abate proceedings because "only Ohio courts can determine if state remedies are still available to Benvenuto and only Ohio courts may decide if Benvenuto's claim has merit."  (ECF No. 15, PageID# 848.)  Magistrate Judge Baughman's order further required Mr. Benvenuto to file a notice with the Court by November 16, 2020, advising that he has filed an action

in Ohio courts and to update the Court every 90 days as to the status of the Ohio action.  (*Id.*) Magistrate Judge Baughman's order also denied without prejudice Mr. Benvenuto's motion to expand the record, and granted the Warden's motion to strike the exhibits attached to the traverse. (ECF No. 15.)

In accordance with Magistrate Judge Baughman's September 14, 2020 Order, Mr. Benvenuto, through counsel, filed a series of status reports (*see* ECF Nos. 16-19) and ultimately advised the Court on November 11, 2021, that: (1) on December 9, 2020, Allen County Court of Common Pleas denied Mr. Benvenuto's petition for post-conviction release; (2) the Third District Court of Appeals subsequently denied Mr. Benvenuto's appeal; and (3) on October 26, 2021, the Supreme Court of Ohio declined to accept jurisdiction. (ECF No. 20.) Attached to the November 11, 2021, status report is the Ohio Supreme Court's judgment entry in this case (Case No. 2021-0964). While Benvenuto did not file the Third District's opinion affirming the trial court's denial of his petition for post-conviction release, it is available on the Ohio Supreme Court docket and attached as **Exhibit 1** to this Report and Recommendation.

The state appellate court stated at the outset of its written ruling denying Mr. Benvenuto's petition for post-conviction relief that, while Mr. Benvenuto conceded that his petition for post-conviction relief was untimely, he nevertheless maintains that he was unavoidably prevented from discovering exculpatory information.  The state appellate court disagreed, finding that: (1) Officer Brotherwood, who testified at the suppression hearing, had been verbally reprimanded in 2018 for failing to correct the name of a drug trafficking suspect in an affidavit filed with the court; (2) the verbal reprimand revealed that, after the investigation, Officer Brotherwood's error was unintentional; (3) the fact that Officer Brotherwood had previously made a mistake was not likely to cause the trial court to find his testimony lacked credibility; and (4) this information was not exculpatory because it did not show that Mr. Benvenuto was not guilty.  Accordingly, the state

13

appellate court concluded that Mr. Benvenuto "failed to show by clear and convincing evidence that if this information had been known earlier, that no reasonable factfinder would have found him guilty of the offense."   (R&R, Exhibit 1.)

## IV.    STANDARDS OF REVIEW AND GOVERNING LAW

### A.    <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Allen County Court of Common Pleas of sentenced Mr. Benvenuto, and the Court takes judicial notice Allen County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Benvenuto's § 2254 petition.

### B.    <u>Exhaustion and Procedural Default</u>

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir.

1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A

petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law ... are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.  **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous —it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's

factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's ... determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet... because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.    ANALYSIS

### A.    <u>Ground One: Double Jeopardy and Equal Protection/Merger</u>

Mr. Benvenuto, through counsel, argues that his convictions and separate sentences for drug possession charges (*i.e.,* edible and leaf marijuana) and drug trafficking charges stemming for the "simultaneous possession of essentially the same controlled substance under R.C. § 2925.11 (*i.e.,* marijuana)", which occurred at the same location, date, and time, violates the Double Jeopardy Clause of the Fifth Amendment and Equal Protection Clause of the Fourteenth Amendment because the two counts of possession and one count of trafficking marijuana should have been merged into a single offense.  (*See* ECF No. 1, PageID # at 17.)  In support of this argument, Mr. Benventuo's

traverse relies primarily on federal circuit case law holding that mere possession of two separate caches of the same drug constitute only a single offense under federal criminal statute 21 U.S.C. § 841(a)(1). (*See* ECF No. 9, citing *United States v. Clay,* 355 F.3d 1281, 1284-85 (11th Cir. 2004); *United States v. Stephens,* 118 F.3d 479, 482 (6th Cir. 1997); *United States v. Dixon,* 921 F.2d 194, 196 (8th Cir. 1990)).  Mr. Benvenuto also cites distinguishable Ohio case law in support of his position.

The Warden maintains in his answer that Benvenuto's first ground for relief fails because: (1) state law errors may not form the basis for federal habeas relief; (2) circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court and thus cannot form the basis for habeas relief under AEDPA; and (3) the question under the Double Jeopardy Clause as to whether punishments are "multiple" is essentially one of legislative intent, and the state court of applies properly applied R.C. § 2941.25 to determine whether the Ohio General Assembly intended to authorize cumulative punishments and ultimately denied Benvenuto's merger claim.  For the following reasons, I find that the Warden's arguments are well-taken.

The Warden correctly contends that, to the extent that Mr. Benvenuto's traverse relies on state case law, "state law errors may not form the basis for federal habeas relief."  *Gilmore v. Taylor,* 508 U.S. 333, 334 (1993) (citing *Estelle v. McGuire,* 502 U.S. 62 (1991).  Similarly, circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. 2254(d)(1).  Therefore, it "cannot form the basis for habeas relief under AEDPA."  *Parker v. Matthews,* 567 U.S. 37, 48 (2012.)  And in any event, Mr. Benvenuto's reliance on distinguishable cases interpreting a federal criminal statute and his attempt to analogize that federal statute to the facts here, which involve violation of state court statutes, is also misplaced.

The state court of appeals overruled Mr. Benvenuto's assignment of error on this issue when it reasonably concluded, after reviewing the evidence, that:

{¶ 37} Initially we note that Appellant contends that the State erred by charging the Appellant with two separate marijuana possession charges arising from the "simultaneous possession" of the drug. However, as it is the prerogative of the State to charge as it deems just, the trial court's treatment of such charges becomes the issue on appeal. Thus, under Appellant's fourth assignment of error, we determine the issue before us is whether or not the trial court erred by failing to merge Counts 54, 55, and 56.

{¶ 38} Directing our attention to the issue of merger, we find that the trial court did not err when it declined to merge Appellant's two counts of possession and his one count of trafficking marijuana into a single offense.

### Standard of Review

{¶ 39} "'A defendant bears the burden of proving that the offenses for which he has been convicted and sentenced constitute allied offenses of similar import.'" *State v. Vanausdal*, 3rd Dist. Shelby No. 17–16–06, 2016–Ohio–7735, ¶ 17, quoting *State v. Campbell*, 12th Dist. Butler No. CA2014–06–137, 2015–Ohio–1409, ¶ 18, citing *State v. Luong*, 12th Dist. Butler No. CA2011–06–110, 2012–Ohio–4520, ¶ 46. Additionally, a reviewing court may look to the information contained in the record to make its allied offense determination. *Id.* An appellate court then reviews de novo the question of whether offenses are allied offenses of similar import. *State v. Potts*, 2016–Ohio–5555, 69 N.E.3d 1227, ¶ 93 (3rd Dist.), citing *State v. Stall*, 3rd Dist. Crawford No. 3–10–12, 2011–Ohio–5733, ¶ 15, citing *State v. Brown*, 3rd Dist. Allen No. 1–10–31, 2011–Ohio–1461, ¶ 36.

### Analysis

{¶ 40} The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and applied to Ohio citizens through the Fourteenth Amendment to the United States Constitution provides "that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.3d 892, ¶ 10 quoting U.S. Constitution, Amendment V. Additionally, "[t]he Double Jeopardy Clause protects against three abuses: (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.' " *Id.*, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, (1969), overruled on other grounds, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201 (1989).

{¶ 41} R.C. 2941.25, the codified version of the double jeopardy clause, provides Ohio's statutory requirements for multiple counts. It provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the

20

indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶ 42} In 2015, the Ohio Supreme Court set forth the following test regarding allied offenses and merger:

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Ruff*, *Id.*

{¶ 43} However, we are unable to conduct a merger analysis under *Ruff*, in part because of the limited record before us. Furthermore, Appellant's trial counsel represented to the trial court that merger was not an issue in this case. (8/21/2017 Tr. at 18). Specifically, the following exchange occurred between Appellant's trial counsel and the trial court:

The Court: Okay. I'll give you the full opportunity to do that. I do want to make sure the record is clear that I did consider the issue of merger. Although convictions were entered when the no contest pleas were given back in July, it's not a final entry until I do the sentencing. So, does the defense want to argue that any of these counts would merge under the case law or 2941.25?

Appellant's Trial Counsel: Not that I found, your Honor. It appears to me that each case is a separate and—well, either with the F–3's, or the F–5's are separate buys, I guess, your Honor, and then I think the Prosecutor made it clear on the record today what the F–3 differentiations were.

(*Id.* at 17–18). In response to Appellant's trial court counsel's statements, the State made the following representation to the trial court:

The Court: Does the State want to have anything? I know you mentioned merger already. Is there anything else you want to add?

Prosecuting Attorney: Just that, your Honor, in light of the facts as were stated during the no contest plea, as well as the argument that I provided today, it's the State's position that none of these counts merge. * * * But, beyond that, we don't believe any of the counts merge.

(*Id.* at 18). Finally, the trial court, when imposing Appellant's sentence, ruled that there was no merger on any of the counts. (*Id.* at 32).

21

{¶ 44} Here, the limited record on appeal with regards to merger reveals that the Appellant (through counsel) and the State agreed that merger was not an issue, which the trial court accepted. As there was no hearing on the issue of merger based on the representation of the parties, our de novo review of the record does not reveal any error in trial court's merger analysis. Accordingly, we find no merit in Appellant's claim that the trial court's failure to merge the offenses resulted in reversible error. Appellant's fourth assignment of error is overruled in its entirety.

This court can only grant habeas relief if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law," as set forth by the holdings of the U.S. Supreme Court, or was "based on an unreasonable determination of the facts" in light of the state court record. *Bobby v. Dixon*, 565 U.S. 23, 27 (2011); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

Upon careful review of the record, I do not find that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.  The Fifth Amendment Double Jeopardy Clause protects against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969); *Brown v. Ohio,* 432 U.S. 161, 165 (1977).  The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), which requires courts to determine whether each charged offense requires proof of a fact the other does not. *Brown,* 432 U.S. at 166.  The Supreme Court has recognized that the Double Jeopardy clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."  *Missouri v. Hunter,* 459 U.S. 359, 366 (1983).  Thus, where "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those statutes proscribe the 'same' conduct under *Blockburge*r, a court's task of statutory construction is at an end and the prosecution may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Id.* (synopsis).  On direct appeal, the state appellate correctly recognized that, under Ohio law:

> Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. § 2941.25(B).  Moreover, Ohio sentencing courts can impose consecutive offenses when a defendant has been conviction of multiple offenses. R.C. § 2929.14(C)(4); *see also Hunter,* 459 U.S. at 368. Accordingly, I do not find that the state appellate court's decision was contrary to, or involved an unreasonable application of, clearly established federal law because the state appellate court reasonably determined that the Ohio state legislature intended cumulative punishments under Ohio's allied offense statute.

Nor do I find that Mr. Benvenuto has rebutted the presumption of correctness of the state court's factual findings with clear and convincing evidence. *Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003); *Warren v. Smith*, 161 F.3d 358, 360–361 (6th Cir.1998); *Frazier v. Bobby*, No. 3:09CV1208, 2011 WL 5086443, at *12 (N.D. Ohio Oct. 25, 2011) (state court's determination of facts unreasonable if findings conflict with clear & convincing evidence to contrary).  Accordingly, I recommend that this Court deny Mr. Benvenuto's Ground One claim.

### B.    <u>Ground Two: Sufficiency of the Evidence</u>

Mr. Benvenuto, through counsel, contends that his convictions for one count of engaging in a pattern of corrupt activity ("RICO") under Ohio Revised Code § 2923.32 is not supported by sufficient evidence.  Specifically, Mr. Benvenuto contends that the State's counsel indicated that the RICO count was not supported by sufficient evidence because all of the predicate offenses stemmed from the discovery of drugs on one particular day (on August 9, 2016) and at one particular location (519 North Jackson in Lima, Ohio).

The Warden argues that this Court should deny Mr. Benvenuto's Ground Two claim because the state appellate court reasonably denied Mr. Benvenuto's claim, and that decision is entitled to

23

AEDPA deference because this decision is not contrary to or an unreasonable application of clearly established Supreme Court precedent.  For the following reasons, I find that the Warden's arguments are well-taken.

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). The Sixth Circuit has recognized that, after AEDPA, federal courts reviewing state habeas claims accord a double layer of deference:

> *First*, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. *Second*, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*White v. Steel,* 602 F.3d 707, 710 (6th Cir. 2009) (quoting *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009) (emphasis added)).  Significantly, under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Here, the sufficiency of the evidence arguments Mr. Benvenuto asserts now mirror the arguments he previously made to the state appellate court.  The state appellate court reasonably rejected Mr. Benvenuto's argument that there was insufficient evidence to support his RICO conviction, setting forth its reasoning as follows:

> {¶ 27} In his third assignment of error, Appellant argues that his RICO conviction (Count 58) following his plea of no contest was not supported by sufficient evidence. Specifically,

24

Appellant asserts that because the State represented to the trial court that the predicate offense stemmed from events that occurred on the same date and at the same time, such failed to establish a pattern of corrupt activity. For the reasons that follow, we disagree.

### Standard of Review

{¶ 28} A "plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment * * *." Crim.R. 11(B)(2). In felony cases, following a plea of "no contest," the "prosecution does not have the obligation to present evidence proving the defendant guilty beyond a reasonable doubt." *State v. Thorpe*, 9 Ohio App.3d 1, 2, 457 N.E.2d 912 (8th Dist.1983). Rather, Crim.R. 11 permits a trial court to enter judgment only based upon the facts as alleged in the indictment. *State v. Burke*, 3rd Dist. Union No. 14–13–09, 2013–Ohio–4318, ¶ 6. "'Where an indictment * * * contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty of the charged offense.'" *Id.* quoting *State v. Bird*, 81 Ohio St.3d 582, 1998–Ohio–606, 692 N.E.2d 1013.

{¶ 29} The trial court had authority under the criminal rules to determine whether the facts alleged in the indictment were sufficient to support a conviction on the offense charged. Here, the indictment, as it related to Appellant's RICO charge, stated, in its relevant part, as follows:

> Count 58: Engaging in a Pattern of Corrupt Activity—F1, [in violation of] § 2923.32(A)(1), 2923.32(B)(1), *Date of Offense: On or about 1/1/2016 through 8/9/2016*. The grand jurors, * * * further find that the Defendant(s), in the County of Allen, State of Ohio, unlawfully while employed by, or associated with, any enterprise did conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt. * * *.

(Emphasis added.) (Doc. No. 3).

### Engaging in a Pattern of Corrupt Activity (RICO)

{¶ 30} "[T]he law in Ohio is that 'if a defendant has engaged in two or more acts constituting a predicate offense, he or she is engaging in a pattern of corrupt activity and may be found guilty of a RICO violation.'" *State v. Thomas*, 3rd Dist. Allen Nos. 1–11–25, 1–11–26, 2012–Ohio–5577, ¶ 47.

{¶ 31} Under R.C. 2923.32(A)(1), Appellant's RICO charge requires proof of the following by the State:

> No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.

R.C. 2923.32(A)(1). R.C. 2923.31(E) defines "[p]attern of corrupt activity" as:

> [T]wo or more incidents of corrupt activity, *whether or not there has been a prior*

*conviction*, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

(Emphasis added.) R.C. 2923.31(E). R.C. 2923.31 further states, in its pertinent part:

"Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprise.

R.C. 2923.31(C).

{¶ 32} Appellant asserts that the trial court determined that the only predicate offense establishing a "pattern of corrupt activity" were Counts 54–57, and since all of those counts occurred on the same date, they cannot be "predicate offenses." Stated clearer, Appellant argues that one event does not constitute a continuous course of conduct. We disagree.

{¶ 33} Initially, we note that Appellant selectively recites facts contained in the record. However, Appellant's RICO charge clearly states that his corrupt activity *occurred from 1/1/2016 through 8/9/2016*. (Doc. No. 3). Further, at the change of plea hearing, the State advised the trial court as follows:

Count Fifty–Eight, the Engaging in a Pattern of Corrupt Activity, the dates alleged there are from January 1st of 2016 through August 9th of 2016. That specifically is based upon our investigation that revealed starting back in January of 2016 this defendant, in conjunction with other people, including two currently indicted co-defendants, began what can only be described as a drive-thru marijuana operation at 519 North Jackson here in Lima, Allen County, Ohio. More specifically, this defendant, along with others, was engaged, conducted, and directly participated, as well as indirectly participating, in the affairs of this enterprise whereby they sold, and repeatedly sold, marijuana.

(Emphasis added). (07/05/2017 Tr. at 27–28).

{¶ 34} Here, we find that the allegations contained in the indictment established a "pattern of corrupt activity." These allegations were proven through the State's representations to the trial court at the plea hearing that the Appellant operated a "marijuana drive thru" operation for at least six (6) months. It is not required that Appellant be convicted of prior incidents of corrupt activity to establish a "pattern of corrupt activity." And, because the indictment contains sufficient facts to establish a pattern of corrupt activity spanning across multiple dates, the trial court was correct in finding Appellant guilty of the RICO charge set forth in Count 58.

{¶ 35} Nonetheless, Appellant relies upon *State v. Cohen* in support of his assertion that the statement recited by the prosecutor to the trial court was factually insufficient and therefore, the trial court should have refused to accept the defendant's no contest plea. *See generally*,

26

*State v. Cohen*, 60 Ohio App.2d 182, 184, 396 N.E.2d 235 (1st Dist.1978) (finding that the "uncontroverted statement of facts recited to the court below not only failed to include, but Absolutely [sic] negatived [sic] the existence of, an essential element of the offense charged in the indictment.") We find such reliance misplaced. Specifically, this Court in State v. Mullen analyzed Cohen's holding finding that Cohen required that the State's statement to the trial court absolutely negated a required element of the offense charge. *State v. Mullen*, 191 Ohio App.3d 788, 2011–Ohio–37, 947 N.E.2d 762, ¶ 19. *See also*, *State v. Woolridge*, 2nd Dist. Montgomery No. 1808, 2000 WL 1475699, *2 (holding that a trial court may not find a defendant guilty based on his no contest plea if the State's statement of facts absolutely negates the existence of an essential element of the offense). Here, the State's recitation of facts as to the Appellant's RICO charge, viewed in its entirety, does not "absolutely negate" any essential element of the charge of Engaging in a Pattern of Corrupt Activity under R.C. 2923.32(A)(1). Thus, we find Appellant's argument without merit.

{¶ 36} Accordingly, we overrule Appellant's third assignment of error.

Upon careful review of the record, I find that Mr. Benvenuto's RICO count was supported by sufficient evidence. Applying the first layer of the "double layer of deference," *White*, 602 F.3d at 710, any rational trier of fact could have found the essential elements of the RICO offense beyond a reasonable doubt because: (1) the state represented to the trial court at the plea hearing that Mr. Benvenuto had operated a "marijuana drive thru" operation for at least six months; (2) it is not required that Mr. Benvenuto be convicted of prior incidents of corrupt activity to establish a "pattern of corrupt activity"; (3) the indictment clearly states that Mr. Benvenuto's corrupt activity occurred from January 1, 2016 through August 9, 2016; and (4) the State's recitation of facts as to Mr. Benvenuto's RICO charge, viewed in its entirety, does not "absolutely negate" any essential element of the charge of RICO charge.

And even if I had concluded (which I do not) that a rational trier of fact could not have found Mr. Benvenuto guilty beyond a reasonable doubt on the RICO count, on habeas review I must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *White*, 602 F.3d at 710. Applying the second layer of the "double layer of deference," I do not find the state appellate court's sufficiency determination unreasonable for the reasons set forth above. Accordingly, I recommend that this Court deny Mr. Benvenuto's Ground Two claim because he has

not demonstrated that the state court judgment was contrary to, or an unreasonable application, of clearly established federal law as determined by the Supreme Court of the United States.

### C. Ground Three: Eighth Amendment and Due Process Clause/Judicial Bias or Vindictiveness

Mr. Benvenuto maintains that the trial court's sentence is a violation of the Eighth Amendment because it was so grossly disproportionate to the offense as to shock the sense of justice of the community inasmuch.  Specifically, Mr. Benvenuto asserts that trial court imposed "essentially a life sentence for non-violent, lower level felonies of the fifth-degree [for] trafficking in marijuana" because he will be 87 years old when he is released.

Mr. Benvenuto also states that the State offered him, and he rejected, a 10-year plea deal prior to the hearing on the motion to suppress.  Following the court's denial of his motion to suppress, the State offered him a 17-year plea deal if he pled guilty and forfeited his right to appeal, which he also rejected.  Instead, Mr. Benvenuto decided to forfeit his right to a jury trial and enter a no contest plea to all the counts in the indictment to preserve his right to appeal the decision on the motion to suppress.  (*Id.* at 724.) The trial court then imposed a 34-year prison sentence, which Mr. Benvenuto claims was tantamount to a life sentence because he was 53 years old at the time of sentencing, while his co-defendants received a five-year prison sentence and a three-year prison sentence, respectively.  Based upon these facts, Mr. Benvenuto surmises that "[i]t seems the only conceivable reason for imposing a prison term two and three times the pretrial recommendation was to penalize [Benvenuto] for exercising his rights to have a motion hearing and to appeal the decision on the motion."  (ECF No. 9, PageID# 724.) Thus, while not a model of clarity, Mr. Benvenuto appears to argue that a due process violation resulted due to judicial bias or vindictive sentencing.

The Warden argues that Mr. Benvenuto's Eighth Amendment argument fails because the Court must defer to the state appellate court's interpretations of Ohio law. I find that this argument

is well-taken.   The State also argues, without citation to any case law, that Mr. Benvenuto's

arguments regarding judicial bias and vindictive sentencing are not relevant to the facts in this case

because Mr. Benvenuto did not exercise his right to a jury trial.  (*See* ECF No. 11, PageID# 823.)

While this specific argument is not well-taken, Mr. Benvenuto's judicial bias and vindictive

sentencing arguments fail on other grounds for the reasons discussed below.

     The arguments Mr. Benvenuto asserts now in his petition and traverse mirror the arguments

he previously made to the state appellate court.   The state appellate court reasonably rejected these

argument, setting forth its reasoning as follows:

> {¶ 45} Lastly, Appellant argues that his sentence was contrary to the sentencing statutes and violated his Eighth Amendment rights. Appellant directs this Court to the sentences received by his co-defendants to demonstrate that his thirty-four (34) year prison sentence was grossly disproportionate to, and not consistent with, sentences received by similar offenders. For the reasons that follow, we disagree.

> ***Standard of Review***
> {¶ 46} R.C. 2953.08(G)(2), entitled "Appeals based on felony sentencing guidelines" provides:

>> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence * * *. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

>> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division 2929.13(B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

>> (b) That the sentence is otherwise contrary to law.

> R.C. 2953.08(G)(2). "[A]ppellate courts must adhere to the plain language of R.C. 2953.08(G)(2)." *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 7. An appellate court may only modify or vacate a sentence if it finds by clear and convincing evidence that the record does not support the sentencing court's decision. *Id.* at ¶ 23. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'"

*State v. Silknitter*, 3rd Dist. Union No. 14–16–07, 2017–Ohio–327, ¶ 7 quoting, *Marcum, supra*, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but does not require the certainty of "beyond a reasonable doubt." *Marcum*, at ¶ 22 quoting Ledford.

### Analysis

{¶ 47} Initially, we note that Appellant does not argue that the trial court failed to make the appropriate sentencing findings. Instead, Appellant, in part, disagrees with the trial court's seriousness findings (under R.C. 2929.12), as well as the trial court's imposition of a thirty-four (34) year sentence for "what amounts to a series of non-violent trafficking offenses for marijuana." Furthermore, Appellant contends that the trial court essentially sentenced him to a "life sentence" for trafficking in marijuana due to his age (53 years old).

{¶ 48} "The Eighth Amendment to the United States Constitution provides: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'" *State v. Simpson*, 11th Dist. Lake No. 2016–L–014, 2016–Ohio–7746, ¶ 26. This Amendment is applied to the states through the Due Process Clause of the Fourteenth Amendment. *Id.*

{¶ 49} "As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." *Id.* quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964). "Instances of cruel and unusual punishment are limited to those that would, under the circumstances, shock any reasonable person and shock the sense of justice of the community." *State v. Weitbrecht*, 86 Ohio St.3d 368, 370 (1999) (citations omitted). In evaluating whether a punishment is cruel and unusual, the U.S. Supreme Court instructs that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Solem v. Helm*, 463 U.S. 277, 290 (1983).

{¶ 50} When reviewing the record before us, the trial court made the following sentencing findings on the record:

> Trial Court: But, with respect to all the counts, I'll review the factors for sentencing purposes under 2929.12. I'll find, again, that the offenses as a more serious fact, well, the offenses were committed as part of an organized criminal activity. Whether there were other individuals involved or not, I don't know. But, it certainly was an organized criminal activity in the way it was set up and how the activity occurred over on Pine (sic) Street.

> It could be argued either way, I guess, on whether the defendant could expect that there would be physical harm caused to persons in committing these offenses. But, I'll find that I don't have any evidence that any persons were harmed. So, that's a less serious fact.

Recidivism factors weigh heavily in the Court's consideration. The defendant does have a previous record, as has been outlined here in the Court and it's in the P.S.I. I'm going to find that he hasn't responded favorably to sanctions previously imposed. He hasn't been rehabilitated to a satisfactory degree. Based upon the P.S.I and what's been presented here today the defendant demonstrates a pattern of substance abuse that's related to the offense.

I'll make a finding that the defendant doesn't show any genuine remorse based upon everything that's been presented here today.

Again, there are a lot of felonies of the fifth degree in this case, but the most serious offenses, obviously, are not felonies of the fourth or fifth degree. So, 2929.13(B)(1)(a) does not require community control. The defendant has the prior felony record, anyways, and so it wouldn't require community control, anyways.

With consideration of the three counts that hold a presumption, I'm going to find that the presumption is not overcome with respect to those three counts. In weighing especially the recidivism factors showing recidivism to be more likely—oh, and I didn't mention the ORAS score. As was pointed out, it was a twenty-six, which indicates a high risk of reoffending, for that's worth. But, I'll find that a community control sanction or a combination doesn't adequately punish the defendant or protect the public from future crime. Weighing the factors showing recidivism I find that they are not outweighed by any factors showing a less likelihood at recidivism.

I would also find the factor that I did find with regard to no physical harm to persons, well, that doesn't outweigh the more serious of this being part of an organized criminal activity.

So, I find that community control would be demeaning to the seriousness of the offenses.

So, with those findings made the Court is going to find that a prison sentence is consistent with the purposes and principles of sentencing. The defendant is not, at this time, amenable to community control. I find that community control sanctions would be demeaning to the seriousness of the conduct and prison does not place an unnecessary burden on State governmental resources.

(8/21/2017 Tr. at 33–34).

 {¶ 51} We find that the record demonstrates that the trial court made the seriousness findings pursuant to R.C. 2929.12(B) & (C). Specifically, the trial court found that Appellant's conduct was more serious because he committed the offense for hire or as a part of an organized criminal activity. (Doc. No. 75). But, the trial court also found that Appellant's conduct was less serious because he did not cause or expect to cause physical harm to any person or property. (*Id*.). While Appellant asserts that the trial court should have credited him

31

with one additional "less serious" factor (under R.C. 2929.12(C) ), we are not persuaded by Appellant's argument. "'It is self-evident that the trial court is in the best position to make the fact-intensive determinations required by the sentencing statutes.'" *State v. McLemore*, 136 Ohio App.3d 550, 554, 2000–Ohio–1619, 737 N.E.2d 125 quoting *State v. Martin*, 136 Ohio App.3d 355, 361, 1999–Ohio–814, 736 N.E.2d 907. The record before us reveals that the trial court was aware of Appellant's "less serious" factors (i.e. record of employment), but was unpersuaded in light of the existing more serious ones. As such, since the trial court was in the best position to make the sentencing determinations, we need not re-analyze the sentencing factors further.

{¶ 52} Next, Appellant argues that his thirty-four (34) year prison sentence for being a "non-violent drug dealer" "shocks the conscious," and directs us to review the sentences received by his co-defendants and other drug dealers to demonstrate that his sentence is disproportionate to his conduct. However, the goal of felony sentencing pursuant to R.C. 2929.11(B) is to achieve 'consistency' not 'uniformity.' *Simpson*, 11th Dist. Lake No. 2016–L–014, 2016–Ohio–7746, ¶ 28. As the court in Simpson noted, " '[a] consistent sentence is not derived from a case-by-case comparison.'" *Id.* quoting *State v. Swiderski*, 11th Dist. Lake No.2004–L–112, 2005–Ohio–6705, ¶ 58. "To the contrary, it is well established that consistency in sentencing is accomplished by the trial court's application of the statutory sentencing guidelines to each individual case." Id. "Thus, in order to show a sentence is inconsistent with sentences imposed on other offenders, a defendant [Appellant] must show the trial court failed to properly consider the statutory purposes and factors of felony sentencing." *Id.*

{¶ 53} Here, the trial court's sentence was within the statutory range and the aggregate term was far less than the maximum sentence that could have been imposed. Moreover, the record reveals that the trial court properly considered the statutory purposes and factors of felony sentencing. (*See*, Doc. No. 75). Interestingly, Appellant concedes that it was his behavior (i.e. setting up a video recording system that documented his repeated drug transactions) that resulted in the bulk of his charges. (*See*, Br. of Appellant at 28).

{¶ 54} While Appellant directs this Court to State v. Gwynne to support his contention that his prison sentence "shocks the conscious," we find several factual distinctions that make Gwynne inapplicable. *State v. Gwynne*, 5th Dist. Delaware No. 16 CAA 12 0056, 2017–Ohio–7570. Unlike the Appellant in *Gwynne*, Appellant in the case sub judice was not a first-time felon and does not appear to take responsibility for actions. *Id.* at ¶¶ 28, 30. Furthermore, Appellant received thirty-four years in prison for convictions on fifty-eight (58) felony counts, while the Appellant in Gwynne received sixty-five (65) years in prison for convictions on thirty-one (31) felony counts and fifteen (15) misdemeanor counts. Id. at ¶¶ 28–29. Thus, to us, *Gwynne* is distinguishable.

{¶ 55} Accordingly, we find that the trial court did not err in the imposition of Appellant's prison sentence and did not fail to consider the statutory factors required when imposing a prison sentence. We overrule Appellant's fifth assignment of error.

### 1. *Eighth Amendment*

Mr. Benvenuto's Eighth Amendment claim fails.  The Eighth Amendment "applies to the states through the Due Process Clause of the Fourteenth Amendment" and "prohibits the infliction of 'cruel and unusual punishments on those convicted of crimes.'" *Wilson v. Seiter,* 501 U.S. 294, 297 (1991).  The Eighth Amendment contains no proportionality guarantee; what is "cruel and unusual" punishment is to be determined without reference to the particular offense.  *See Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (holding petitioner's sentence under a Michigan law of a mandatory term of life in prison without the possibility of parole for possession of 650 grams of cocaine was not an Eighth Amendment violation); *Hutto v. Davis,* 454 U.S. 370, 373 (1982) (rejecting an Eighth Amendment challenge to a prison term of 40 years and a fine of $20,000 for possession and distribution of approximately nine ounces of marijuana).

And while Mr. Benvenuto's counsel notes that the trial court's 34-year prison sentence violates the Eighth Amendment because it is essentially a life sentence, that proportionality argument is unavailing in light of the Supreme Court's recognition in *Harmelin* that "[o]ur cases creating and clarifying the individualized capital sentencing doctrine have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties." *Id.* at 996.  In fact, the Court in *Harmelin* impliedly rejected the same argument Mr. Benvenuto advances now*, i.e.,* that Mr. Benvenuto's age at the time of sentencing means he is essentially serving a life sentence and thus violates the Eighth Amendment.  ("In some cases, moreover, there will be negligible difference between life without parole and other sentences of imprisonment—for example, … a lengthy term sentence without eligibility for parole, given to a 65–year–old man. But even where the difference is the greatest, it cannot be compared with death. We have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further.")

The Sixth Circuit has adopted the *Harmelin* "narrow proportionality principle," *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000), and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir.1995) (quoting *United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir.1994)); *see also Richards v. Taskila,* No. 20-1329, 2020 WL 8024582, at *4 (6th Cir. Sept. 1, 2020) (rejecting Eighth Amendment challenge because "a claim regarding the calculation of a sentence under state law is typically not cognizable in a federal habeas corpus proceeding when the sentence falls within the limits prescribed by the state, unless the petitioner can show that the sentence violated due process by being based upon material misinformation of constitutional magnitude.") (citing *Koras v. Robinson*, 123 F. App'x 207, 213 (6th Cir. 2005); *Roberts v. United States*, 445 U.S. 552, 556 (1980)); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000)). Moreover, a state court's decision to impose consecutive - rather than concurrent - sentences is within its discretion. *See Oregon v. Ice*, 555 U.S. 160, 168 (2009). ("The historical record demonstrates that the jury played no role in the decision to impose sentences consecutively or concurrently. Rather, the choice rested exclusively with the judge.").

Here, it is undisputed that the state appellate court found that the trial court's sentence was within the statutory range, the aggregate term was far less than the maximum sentence that could have been imposed, and  consecutive sentencing is permissible under Ohio law. *See* R.C. § 2929.14(A).  Accordingly, Mr. Benvenuto has not established that the state court's denial of his Eighth Amendment claim is contrary to or an unreasonable application of clearly established law, nor has Mr. Benvenuto rebutted the presumption of correctness of the state court's factual findings with clear and convincing evidence. *Bowling*, 344 F.3d at 497 (6th Cir. 2003); *Warren ,* 161 F.3d at 360–361 (6th Cir.1998); *Frazier,* 2011 WL 5086443, at *12.  Accordingly, I recommend that this Court deny Mr. Benvenuto's Eighth Amendment claim.

2.  ***Due Process/Judicial Bias or Vindictive Sentencing***

The Fourteenth Amendment's Due Process clause requires a fair trial in an impartial tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997); *In re Murchinson*, 349 U.S. 133 (1995).  However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal* Co., Inc., 556 U.S. 868, 883 (2009) ("The difficulties of inquiring into actual bias ... simply underscore the need for objective rules.").  The Supreme Court has recognized "constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge 'has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion,' *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); (2) certain contempt cases, such as those in which 'the trial judge permitted himself to become personally embroiled with the petitioner,' *Offut v. United States*, 348 U.S. 11, 17 (1954); *see also Taylor v. Hayes*, 418 U.S. 488 (1974); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905." *Weaver v. Christiansen,* No. 1:19-cv-127, 2021 WL 6551240, at * 11 (W.D. Mich. Feb. 10, 2021), *report and recommendation adopted,* 2021 WL 5710770 (W.D. Mich. Dec. 2, 2021).  Mr. Benvenuto does not contend that any of these indicia of bias are applicable here, nor does the record support such a finding.

Moreover, while Mr. Benvenuto essentially relies on the trial court's sentencing determination to support his vindictive sentencing claim, the Supreme Court has recognized that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  *Liteky v. United States,* 510 U.S. 540, 555 (1994).  Moreover, federal courts have held that a sentence

imposed by a trial court that is longer than what a defendant may have received if he had accepted a plea bargain does not constitute judicial vindictiveness. *See, e.g., Weaver,* 2021 WL 6551240, at *17 ("Petitioner's further suggestion that Judge Monton's sentence evidences vindictiveness because it is longer than the concurrent sentences Petitioner would have faced if he entered a plea in both cases simply ignores the nature of plea bargaining.") (citing *Brodenkircher v. Hayes,* 434 U.S. 1978); *Williams v. Jones,* 231 F. Supp.2d 586, 599 (E.D. Mich. 2002) ("However, the mere imposition of a longer sentence than defendant would have received had he pled guilty and had the court accepted his guilty plea does not automatically constitute vindictive or retaliatory punishment. The Supreme Court's plea bargaining decisions make it clear that a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiated plea be refused.") (citing *Corbitt v. New Jersey*, 439 U.S. 212 (1978); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 (1978)).

In  *Weaver,* the court rejected the petitioner's vindictive sentencing claim, wherein the petitioner argued that the trial court imposed a harsher sentence that what he would likely would have received through a plea bargain, finding that:

> It is not surprising at all that one who foregoes the burdens of the [plea] bargain foregoes the benefits as well. … Petitioner's realization of that risk in the form of a harsher sentence—even a significantly harsher sentence—does not support his claim of vindictiveness. It reflects his poor choice.

*Weaver,* 2021 WL 6551240, at *18.  And in *Williams,* the court rejected the petitioner's vindictive sentencing claim for the same reason:

> It is equally clear that a defendant is free to accept or reject the bargain offered by the state. Once the bargain—whether it be reduced charges, a recommended sentence, or some other concession—is rejected, however, the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is presumptive evidence of judicial vindictiveness.

*Williams,* 231 F.Supp.2d at 599.  Like the petitioners in *Weaver* and *Williams,* Mr. Benvenuto also rejected plea bargain offers from the State that may have resulted in a more favorable sentence if the

trial court had accepted the plea agreement.  And like the petitioners in *Weaver* and *Williams,* Mr. Benvenuto offers no evidence of actual judicial vindictiveness.  Thus, like the courts in *Weaver* and *Willaims,* I find here that the state appellate court's rejection of Mr. Benvenuto's judicial vindictiveness claim is not contrary to, or an unreasonable application, of clearly established law.

### D.  <u>Grounds Four: Fourth Amendment and Prosecutorial Misconduct</u>

Mr. Benvenuto asserts in his traverse that the trial court violated his due process rights under the Fifth, Sixth, and Fourteenth Amendments because: (1) "the State trial court committed an abuse of discretion by denying" Petitioner's motions to suppress; and (2) Benvenuto was not provided an opportunity for full and fair litigation of a Fourth Amendment claim.  Specifically, Mr. Benvenuto maintains that the state withheld exculpatory evidence, in violation of *Brady v. Maryland,* that one of the testifying officers, Officer Brotherwood, had falsified a search warrant in another case prior to Mr. Benvenuto's case.  Mr. Benvenuto also argues that there was no meaningful review by the courts of appeals or the trial court because neither of these court analyzed or analogized any case law in support of exigent circumstances in this case.

The Warden maintains that Mr. Benvenuto's Fourth Amendment claim fails because he had a full and fair opportunity to present his Fourth Amendment claims to the Ohio courts.  And in the Warden's reply to Mr. Benvenuto's traverse, the Warden maintains that Mr. Benvenuto did not demonstrate that he properly exhausted and fairly presented a federal constitutional prosecutorial misconduct claim to the Ohio courts.  That is because, the Warden contends, the Fourth Amendment claims that Mr. Benvenuto alleged in his direct appeals to the state appellate court and Ohio Supreme Court did not allege prosecutorial misconduct based on a *Brady* violation, and – at the time the Warden filed his reply to Mr. Benvenuto's traverse – Mr. Benvenuto did not timely file for collateral post-conviction relief in the state courts.

### 1. *Fourth Amendment Claim*

Generally, a writ of habeas corpus cannot be granted on the ground that a petitioner's Fourth Amendment rights were violated if the petitioner had an opportunity to present the claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007); *accord Ewing v. Ludwick*, 134 F. App'x 907, 911 (6th Cir. 2005). Indeed, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced in his trial." *Powell* at 494. Full and fair litigation requires the court to consider: (1) "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim" and (2) "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted). If there was an opportunity to raise the claim and the presentation was not frustrated, the petitioner's claim is non-cognizable. *See id.*

The Sixth Circuit Court of Appeals has explained that the *Powell* "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim. *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Thus, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.* Rather, a court must "presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim." *Id.* In sum, the Sixth Circuit explained that, in considering whether a habeas petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, the court asks: "Did the state courts permit the defendant to raise the claim or not?" *Id.* at 640.

Here, Mr. Benvenuto was able to fully and fairly litigate his Fourth Amendment claims in the Ohio courts.  The state court record shows that: (1) Mr. Benvenuto's counsel filed a motion to suppress the seized evidence and a supplemental memorandum to support the motion to suppress; (2) the trial court denied the motion in a written orders after conducting a suppression hearing; (3) Mr. Benvenuto was able to preserve his Fourth Amendment claims for appeal by entering No Contest pleas; (4) Mr. Benvenuto raised his Fourth Amendment claims on direct appeal to the state appellate court, and that court denied them; and (5) Mr. Benvenuto also raised these claims in the Ohio Supreme Court, which declined to accept jurisdiction of the appeal.  Moreover, the state appellate court reasonably rejected Mr. Benvenuto's Fourth Amendment claim on direct appeal, reasoning:

{¶ 17} Appellant argues in his first assignment of error that the trial court erred in overruling his motion to suppress because the officers: did not have probable cause to enter his home; did not have an objectively reasonable basis for concluding that a loss or destruction of evidence was imminent; and because officers illegally continued a warrantless search of his property after the investigation into exigent circumstances had concluded.

{¶ 18} In his second assignment of error, Appellant argues that illegally obtained information was included in the affidavit to support a finding of probable cause, and that without such information the issued search warrant lacked probable cause. For the following reasons, we disagree.

### Standard of Review

{¶ 19} "A review of the denial of a motion to suppress involves mixed questions of law and fact." *State v. Lewis*, 3rd Dist. Auglaize No. 2–16–13, 2017–Ohio–996, 86 N.E.3d 974, ¶ 8 citing *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* "An appellate court must accept the trial court's findings of facts if they are supported by competent, credible evidence." *Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." Id.

### Analysis

{¶ 20} Appellant argues that the trial court should have granted his motion to suppress because officers impermissibly conducted a warrantless sweep of the real property located at 519 North Jackson St. in Lima, Ohio. The parties agree that officers conducted a warrantless

search of Appellant's property without the consent of the Appellant or any individual located inside the premises.

{¶ 21} "The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals against unreasonable searches and seizures by the government." *State v. Seaburn*, 3rd Dist. Seneca No. 13–17–12, 2017–Ohio–711, ¶ 11. "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *State v. Johnson*, 187 Ohio App.3d 322, 2010–Ohio–1790, 931 N.E.2d 1162, ¶ 13 quoting *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S.Ct. 1284 (2004). This presumption may be overcome in certain circumstances because "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Kentucky v. King*, 563 U.S. 452, 459, 131 S.Ct. 1849 (2011) quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943 (2006).

{¶ 22} However, "[i]t is well established that 'exigent circumstances,' including the need to prevent the destruction of evidence, permit police officers to conduct an otherwise permissible search without first obtaining a warrant." *Id.* at 455. This exception recognizes situations where the exigencies of [a] situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. In order to satisfy the exigent circumstances exception, law enforcement officers need probable cause plus exigent circumstances. *State v. Harris*, 8th Dist. Cuyahoga No. 84591, 2005–Ohio–399, ¶ 32. Lastly, "[l]aw enforcement agents bear a heavy burden when attempting to demonstrate exigent circumstances that might justify a warrantless entry." *Id.*

{¶ 23} In the case sub judice, the trial court determined the following constituted exigent circumstances, based upon the evidence presented at the suppression hearing: 1) law enforcement officers' observation of McKercher driving his vehicle in front of a warehouse on August 9, 2016, and shortly thereafter driving out of a warehouse being followed by a second vehicle; 2) McKercher's past involvement in drug-related activities; 3) McKercher's vehicle, and the vehicle following him, drove in opposite directions upon leaving the warehouse; 4) officers finding a duffel bag containing several marijuana-filled heat sealed bags in the trunk of McKercher's vehicle after McKercher's traffic stop and subsequent search; 5) Investigator Brotherwood's observation of an unknown male watching McKercher's traffic stop while on the phone; 6) Appellant's elusive driving of the Chrysler 200 (the second vehicle); 7) Appellant's failure to properly signal his intention to turn; 8) Patrolman Glanemann's observation that Appellant was visibly nervous; 9) Patrolman Glanemann's testimony that she could smell the odor of marijuana on Appellant or in his car; 10) the K–9's indication of the presence of narcotics in Appellant's vehicle; 11) Patrolman Glanemann finding a container of several different pills in Appellant's pocket during the pat down search; 12) law enforcement officers locating a small amount of marijuana residue in a heat-sealed bag; 13) the bag in Appellant's vehicle being similar to the heat sealed bags located in McKercher's vehicle; 14) Appellant's phone ringing multiple times while law enforcement officials drove his vehicle back to the sheriff's department; 15) officers' observation that upon returning to 519 N. Jackson St., an unknown white vehicle was driving around the warehouse; 16) upon Beth McElfresh opening the door to the residential property, the smell of marijuana coming from the residence; 17) Beth McElfresh indicating that the

residential portion of the property was connected to the warehouse portion of the property; and 18) Investigator Kunkleman's testimony that he believed a protective sweep was necessary to prevent the destruction of evidence. (Doc. No. 59).

{¶ 24} Furthermore, upon law enforcement officers entrance into the residence to conduct a protective sweep, Investigator Kunkleman testified that there was evidence of illegal drug activity, including "dabs" or extractions of THC in plain view. (*Id.*). And during the sweep, the trial court found that law enforcement officers did not open any drawers or cupboards because they were only searching for individuals who could possibly destroy evidence. (*Id.*).

{¶ 25} In our review of the record, including the transcript of the suppression hearing, we find competent and credible evidence of exigent circumstances to overcome the presumption of a warrantless entry into Appellant's residence and warehouse. Specifically, we find the testimony of Investigator Kunkleman to be compelling that, based upon his training and experience, he had reason to believe that evidence (i.e. marijuana and drug-related paraphernalia) would be destroyed or transported by individuals located at the property to justify the protective sweep.

{¶ 26} Thus, we find that the trial court did not err in denying Appellant's motion to suppress, as law enforcement entered the premises under the exigent circumstances exception to the warrant requirement. Accordingly, the evidence obtained by law enforcement officers during the protective sweep of Appellant's property was not unconstitutionally or illegally obtained, and we overrule Appellant's first and second assignments of error.

In sum, Mr. Benvenuto's Fourth Amendment claims are not cognizable because he had the opportunity for full and fair consideration of his Fourth Amendment claims in the Ohio state courts. The state trial court and state appellate court recognized Mr. Benvenuto's Fourth Amendment claims and ruled on them, and this is sufficient to preclude habeas review. *See Good,* 729 F.3d at 640 ("Good could, indeed did, present his suppression motion to the state trial court, and the trial court rejected it. He presented it again to the state appellate court, and the appellate court rejected it once more. That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*.") And because for the reasons set forth below Mr. Benvenuto cannot establish that prosecutorial misconduct prevented him from fully and fairly litigating his Fourth Amendment claim in the state courts, I recommend that the Court deny Mr. Benvenuto's Fourth Amendment claim as non-cognizable.

### *2.  Prosecutorial Misconduct Argument (in support of Fourth Amendment claim)*

As set forth above, Magistrate Judge Baughman allowed Mr. Benvenuto to exhaust his prosecutorial misconduct argument in state court through post-conviction relief.  On December 9, 2020, the trial court dismissed the petition for post-conviction without a hearing, and Mr. Benvenuto filed a notice of appeal from that dismissal.  While Mr. Benvenuto did not file the state appellate court's opinion affirming the trial court's denial of his petition for post-conviction release, it is available on the Ohio Supreme Court docket and attached to this Report and Recommendation as **Exhibit 1**.  The state appellate court (Case No. 1-20-60, Third District Court of Appeals) dismissed the petition as untimely, finding that Mr. Benvenuto was not unavoidably prevented from discovering exculpatory information.  The state appellate court's decision is set forth in relevant part below:

On appeal, Appellant raises the following assignment of error.

> The trial court erred in dismissing Appellant's petition for post-conviction relief without an evidentiary hearing where Appellant provided new evidence demonstrate[ing] a sufficient factual basis for relief violating his rights under the Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

In his assignment of error, Appellant alleges that the trial court erred in denying his petition for post-conviction relief.  The filing of this petition is governed by R.C. 2953.21(A)(2)(a) which requires that the petition be filed "no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction:

> Before granting a hearing on a petition filed under [this statute], the court shall determine whether there are subsequent grounds for relief.  In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits and the documentary evidence, all the files and records pertaining to the proceedings against the petition ***.

R.C. 2953.21(D).  If the party is not entitled to relief, no hearing shall be required.  R.C. 2953.21(F).

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of

the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted***

Here, Appellant admits that he did not file his petition for post-conviction relief within the required time.  However, he claims that he was unavoidably prevented from discovery of exculpatory information.  Having reviewed the record, specifically the attached exhibits, this Court disagrees.

Appellant claims that the State failed to tell him about the misconduct committed by two officers, Sheriff Samuel Crish ("Crish") and Officer Dustin Brotherwood ("Brotherwood"), and that if that misconduct had been known, the trial court would have ruled differently on the motion to suppress.  Appellant's petition makes no allegations as to how Crish's misconduct was related to his case in any way and the record shows that Crish did not testify at the suppression hearing.  As such, the credibility of Crish was not an issue during the suppression hearing.  Appellant then claims that Brotherwood, who did testify at the suppression hearing, had been verbally reprimanded in 2018 for failing to correct the name of a drug trafficking suspect in an affidavit filed with the court.  Ex. As.  However, the verbal reprimand revealed that after the investigation, it was determined that Brotherwood's error was unintentional.  The fact that Brotherwood had previously made a mistake was not likely to cause the trial court to find his testimony lacked credibility.  This Court notes that the information Appellant claims he was prevented from discovering was not exculpatory to Appellant as it did not show that Appellant was guilty.  Appellant has failed to show by clear and convincing evidence that if this information had been known earlier, that no reasonable factfinder would have found him guilty of the offense.

Appellant has failed to show that both of the conditions set forth in R.C. 2953.23(A)(1) applied.  Therefore, the 365 day time limit for filing the petition for post-conviction relief is applicable in this case.  Appellant failed to file a timely petition.  The trial court did not err in dismissing the petition without a hearing and the assignment is overruled.

The Sixth Circuit has expressly held that it is not inappropriate for the Court to raise a procedural default defense *sua sponte*. *Sowell v. Bradshaw*, 372 F. 3d 821, 830 (6th Cir. 2004);

43

*Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002) (§ 2254 capital case); *White v. Mitchell*, 431 F.3d 517, 514 (6th Cir. 2005); *Elzy v. United States*, 205 F.3d 882 (6th Cir. 2000) (§2255 case). Here, it is undisputed that Mr. Benvenuto failed to raise his prosecutorial misconduct argument in support of his Fourth Amendment claim on his direct appeal or to the Ohio Supreme Court. (*See* ECF Doc. 15-2, PageID#535-37, 609-10).  And in Mr. Benvenuto's post-conviction petition appeal, the state appellate court held that Mr. Benvenuto failed to show that both conditions set forth in R.C. 2953.23(A)(1) applied. Because Mr. Benvenuto failed to comply with a state procedural rule, the Ohio appellate court enforced the rule, and the procedural rule is an adequate and independent state ground for denying review of Mr. Benvenuto's prosecutorial misconduct claim, the prosecutorial misconduct argument is procedurally defaulted unless he can show cause and prejudice to excuse the default.  *Cody v. Sheldon,* No. 1:18CV1787, 2020 WL 9460507, at *30 (N.D. Ohio March 24, 2020) (citing *Williams*, 460 F.3d at 806; *Maupin*, 785 F.2d at 138)), *report and recommendation adopted,* 2021 WL 1437557 (N.D. Ohio April 16, 201).

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

After filing a status report on November 11, 2021, informing the Court of the completion of the state court post-conviction proceedings, neither party submitted additional briefing in this case. Yet, even if I were to conclude (which I do not) that there was cause for Mr. Benvenuto's delay in

failing to comply with a state procedural rule, I do not find any prejudice in the record before me, especially in light of the state appellate court's reasonable determination that Mr. Benvenuto "failed to show by clear and convincing evidence that if this information had been known earlier, that no reasonable factfinder would have found him guilty of the offense" because: (1) Crish did not testify at the suppression hearing; (2) Officer Brotherwood's failure to correct the name of a drug trafficking suspect in a prior case was determined to be unintentional; and (3) Officer Brotherwood's previous mistake was unlikely to cause the trial court to find his testimony lacked credibility and, as a result, grant the motion to suppress. Nor does Mr. Benvenuto make any argument – much less show – that he is actually innocent of the offenses. *Schlup,* 513 U.S. at 324; *Lundgren*, 440 F.3d at 764.

Prosecutorial misconduct, therefore, cannot serve as a basis here to support Mr. Benvenuto's Ground Four claim that prosecutorial misconduct prevented him from fully and fairly litigating his Fourth Amendment claim in the state courts. Accordingly, I reiterate my recommendation that the Court deny Mr. Benvenuto's Fourth Amendment claim as non-cognizable.

## V.    RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.    Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant

to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B.**     **Analysis**

Mr. Benvenuto has not made a substantial showing of a denial of a constitutional right for the reasons set forth above.  Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VI.     RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Benvenuto's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability.

Dated:  February 6, 2023              *Jennifer Dowdell Armstrong*
                                      Jennifer Dowdell Armstrong
                                      U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial

resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).